UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALSA CORPORATION d/b/a | ) | |
| ALSA REFINISH, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO.  13-11403-JGD |
| | ) | |
| PPG INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND
## ORDER ON DEFENDANT'S MOTION TO DISMISS

May 13, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of the negotiation, execution, and subsequent termination of

a 1997 agreement ("Agreement") between the plaintiff, Alsa Corporation d/b/a Alsa

Refinish ("Alsa"), and the defendant, PPG Industries, Inc. ("PPG"), regarding the

manufacture, marketing and distribution of a soft feeling paint product for which Alsa

had obtained the exclusive distribution rights.  Alsa claims that PPG induced it to enter

into the Agreement and relinquish its exclusive rights with promises that it would work

with the plaintiff to develop markets for the soft feeling paint and to accomplish the goals

memorialized in the Agreement.  However, in 2000, PPG informed Alsa that it was

terminating the Agreement.  Alsa contends that the reasons PPG gave for ending the

parties' contractual relationship were false, and that its true purpose was to avoid its

obligations to the plaintiff, including its obligation to pay Alsa commissions and royalties on sales of the product.  By its Verified Complaint, Alsa has asserted claims against PPG for fraudulent inducement (Count I), breach of contract (Count II), fraud (Count III), unfair trade practices (Count IV), breach of fiduciary duties (Count V), and injunctive relief (Count VI).

The matter is before the court on "Defendant PPG Industries, Inc.'s Motion to Dismiss the Complaint in its Entirety" (Docket No. 9).  By its motion, PPG contends that each of Alsa's claims must be dismissed with prejudice for failure to comply with the pleading requirements of Fed. R. Civ. P. 8(a) and 9(b), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  As described below, this court finds that each of Alsa's tort claims is barred by the "gist of the action" doctrine, which prevents plaintiffs from re-casting breach of contract claims into tort claims, and that Alsa has otherwise failed to state a plausible claim for relief against PPG since its termination complied with the terms of the Agreement.  Therefore, and for all the reasons detailed herein, PPG's motion to dismiss is ALLOWED.  However, the dismissal shall be WITHOUT PREJUDICE.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  "Ordinarily, a court may not consider any documents that are outside of the

complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "When a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)) (punctuation omitted). Applying this standard to the instant case, the facts relevant to the defendant's motion to dismiss are as follows.[1]

---

[1] In addition to the Verified Complaint (Docket No. 1), this court has considered the PPG/Alsa Agreement, which is attached as Exhibit 1 to the Declaration of Samuel Goldblatt, Esq. (Docket No. 11) ("Def. Ex. 1"), and the February 29, 2000 letter from Howard S. Thaller at PPG to Ike Banoun at Alsa, which is attached as Exhibit 2 to Attorney Goldblatt's Declaration ("Def. Ex. 2"). Both of those documents are specifically referred to in the Complaint and are central to the plaintiff's claims. Therefore, it is appropriate for this court to consider them without converting the defendant's motion into one for summary judgment. See Alt. Energy, Inc., 267 F.3d at 33. However, PPG has not shown that the Termination Agreement attached as Exhibit 3 to Attorney Goldblatt's Declaration falls within the narrow scope of documents that may be considered by the court on a motion to dismiss under Rule 12(b)(6). Therefore, this court has not considered it, and has not incorporated it into the Statement of Facts set forth herein. This court also will not consider the defendant's arguments which are premised on the Termination Agreement.

**The Parties' Negotiations**

As described above, this case arises out of an Agreement involving the manufacture, marketing and distribution of a paint product known as "soft feeling" or "soft touch" coating (the "Product").  (See Compl. ¶ 7).  Originally, the Product was manufactured in Europe by Tego Becker S.r.l. ("Tego Becker"), and was used in the automotive components sector to paint interior plastic parts.  (Id. ¶ 8).  Alsa claims that in 1994, its predecessor, Jewelpak Corporation ("Jewelpack"), entered into a Distribution Agreement with Tego Becker under which Jewelpack acquired the exclusive right to sell the Product in North America, South America, and Asia.  (Id. ¶¶ 7, 9-10).  Thus, by the time the parties began to discuss the possibility of a business deal, Alsa held the sole license to use Tego Becker's technical data and to distribute the Product in those markets. (See id. ¶¶ 11-13).

The parties initially met at a trade show in Chicago in 1995.  (Id. ¶ 11).  According to Alsa, PPG represented that it was interested in the Product for its own lines, but recognized the need to work with Alsa if it wished to obtain any rights in the Product. (Id. ¶ 12).  Accordingly, over the course of the next two years, the parties proceeded to negotiate the terms of a deal.  (Id. ¶ 13).  Alsa claims that throughout the period of their negotiations, PPG recognized that Alsa was devoting all of its resources toward the development of the Product.  (Id. ¶ 14).  It further claims that PPG encouraged it to continue such efforts "on the promise that, if successful, an agreement would be reached under which PPG would manufacture the Product in a joint venture with Alsa."  (Id.).

The plaintiff alleges that during the parties' negotiations, PPG made various representations that induced Alsa to work with PPG and ultimately relinquish the exclusive rights that it had acquired from Tego Becker.  (Id. ¶¶ 17, 19-20).  In particular, PPG allegedly represented that the parties "would jointly and severally develop markets for soft feeling paint."  (Id. ¶ 17).  According to Alsa, PPG also represented that it "would abide by the terms that were later memorialized in the Agreement[,]" including terms calling for the payment to Alsa of profits and commissions from sales of the Product.  (See id. ¶¶ 19, 22-25).  Moreover, PPG allegedly stated that after the Agreement was executed, "the parties would work together in good faith to pursue the goals of the Agreement." (Id. ¶ 19).  As described below, Alsa claims that PPG's representations were false, and that it did not intend to carry out its contractual obligations to the plaintiff.

### The Parties' Agreement

Alsa and PPG ultimately entered into an Agreement, which became effective as of March 6, 1997.  (Def. Ex. 1 at 1).  Therein, the parties recognized that Tego Becker owned a body of technical data, including but not limited to patents, formulations, and manufacturing procedures relating to the production of a soft touch coating system, and that PPG and Alsa wished to "jointly and severally develop markets for the use of coating compositions having properties and characteristics the same as, or better" than Tego Becker's system.  (Id. at 1 & ¶ B).  They also indicated that in order to accomplish this goal, PPG would be entering into a separate agreement with Tego Becker, referred to as the "PPG/Tego Agreement," under which PPG would obtain a license to use Tego

Becker's body of technical data.  (Id. ¶ B).  The record indicates that PPG did enter into a licensing agreement with Tego Becker, which was terminated in 2000.

Pursuant to the Agreement between Alsa and PPG, the defendant agreed to make a one-time payment of $250,000 to Alsa, and to provide it with a report verifying PPG's ability to manufacture the Product, in exchange for certain licensing rights and services from Alsa.  (Id. ¶ 3.2).  In particular, Alsa agreed to relinquish its exclusive license to sell and distribute the Product.  (Id. ¶ 3.2(a)).  It also agreed, among other things, that during the term of the Agreement, it would provide PPG and its affiliates with marketing assistance for the manufacture, distribution and sale of the Product.  (Id. ¶ 3.2(f)).  Alsa claims that it performed all of the marketing work for the new Product without any assistance from PPG.  (Compl. ¶ 17).

The Agreement also contained provisions under which the parties agreed to provide each other with various payments and benefits based on sales of the Product.  For example, PPG agreed that during the term of the Agreement, it would share fifty percent of the profits from sales to certain customers with Alsa.  (Id. ¶ 4.2).  It also agreed to pay Alsa royalties, both during and after the term of the Agreement, based on sales to other, specified customers.  (Id. ¶¶ 3.2(c), 4.4 - 4.7).  Furthermore, PPG agreed to provide Alsa with accountings "[w]ithin sixty (60) days after the first day of March, June, September and December of each calendar year[,]" and to pay Alsa any royalties and/or profits that were due for the preceding quarter.  (Id. ¶ 4.11).  Alsa similarly agreed to share profits

and pay royalties to PPG, and to provide PPG with accountings, based on its own sales of the Product.  (See id. ¶¶ 3.7, 4.9, 4.11).

### The Termination Provision

Section 5 of the Agreement defined the term of the contract and addressed the circumstances under which the parties could terminate their Agreement.  Thus, section 5 provided in relevant part that "[t]his Agreement shall terminate five (5) years after the EFFECTIVE DATE, unless: (a) it is earlier terminated as provided in Subsections 5.4 through 5.9; or (b) it is extended by mutual written consent of the parties."  (Id. ¶ 5.1).  It also provided, in subsection 5.5, that "[i]n the event the PPG/TEGO AGREEMENT terminates prior to five (5) years after the EFFECTIVE DATE, either party shall have the option to terminate this Agreement upon giving the other party sixty (60) days written notice."  (Id. ¶ 5.5).  Therefore, the parties expressly agreed that the Agreement could be terminated prior to the expiration of the 5-year term in the event PPG's contractual relationship with Tego Becker came to an end.

The Agreement contained a choice of law provision under which the parties agreed that "[t]he validity, interpretation and performance of this Agreement shall be governed in accordance with the laws of the Commonwealth of Pennsylvania, United States of America (excluding, any choice-of-law rules of the Commonwealth of Pennsylvania which may direct or refer any such determination to the laws of another jurisdiction)." (Id. ¶ 9.2).  The parties agree that this provision applies in the instant case, and that Pennsylvania law governs the substance of Alsa's claims.  (See Def. Mem. (Docket No.

10) at 8 n.2; Pl. Opp. Mem. (Docket No. 16) at 13-16). The Agreement also contained an integration clause under which the parties agreed that "[t]his writing constitutes the entire agreement between the parties hereto relating to the subject matter of this Agreement, and there are no understandings, representations, or warranties of any kind except as expressly set forth herein." (Def. Ex. 1 ¶ 10.3).

### PPG's Termination of the Agreement

Alsa claims that the Agreement initially worked as planned, that accountings and payments were made regularly, and that at one point it was receiving approximately $100,000 a month from PPG pursuant to the terms of the Agreement.[2] (Compl. ¶¶ 27-29). However, in February 2000, PPG sent Alsa a letter in which it informed the plaintiff that it was terminating the parties' Agreement. (See id. ¶ 30). Alsa alleges that in its letter, PPG stated that the soft coating business was not profitable, that it no longer had an interest in the Product, and that it was "no longer going to manufacture the Product in any form or in any of PPG's lines of business." (Id.). In fact, the letter, which was written by Howard S. Thaller, PPG's Manager of Marketing & Development, and was sent to Ike Banoun at Alsa, specifically explained as follows:

> I regret to inform you that the Soft-Feeling Licensing Agreement
> between Tego-Becker and PPG Industries has been terminated.

---

[2] While Alsa alleges that the Agreement worked as planned for a period of two years, the record indicates that the Agreement remained in place for a period of approximately three years. As described above, the Agreement became effective as of March 6, 1997. (Def. Ex. 1 at 1). Moreover, there is no dispute that PPG did not terminate the Agreement until 2000, about three years into the five-year term of the Agreement. (Compl. ¶ 30; Def. Ex. 2).

<u>Effective March 1, 2000, PPG will no longer be able to supply soft feeling products based on Tego technology to the general market. As a direct consequence, we are terminating the PPG-Alsa agreement under the terms stated in section 5.5.</u>

As part of the termination of the Tego-PPG Agreement, Mike Henderson has agreed to allow PPG to continue to supply Alsa with the Tego-Becker Soft Feeling System so that you will be able to continue any programs you may have in place.  This arrangement will also allow Alsa to supply Stahl should the business you have been pursuing materialize there.  A separate notification of the termination will be sent to your attention that details the continuing mutual obligations that exist under the terms of the PPG-ALSA agreement.

These events have occurred for a number of reasons.  First and foremost, the level of sales developed did not generate the minimum royalties for the second consecutive year, and our agreement with Tego-Becker did not allow us to continue by the simple expedient of paying the difference.

Moreover, during the second half of 1999, a global shortage of two key ingredients forced PPG to incur large expenses including off shore spot buys, air freighting and expediting materials in efforts to maintain production and avoid shutting down Microsoft's vendor, Triquest.  PPG was placed on allocation for one of the materials that is key to the "feel" of the product, and if the full allocation were used for the manufacture of Tego's soft feeling coating, total product sales would be less than $1 million.

In all, total costs related to the Soft-Feeling program and support for Microsoft and Triquest resulted in a loss position for PPG for 1999.  With sales related to the mouse program winding down as the program reaches maturity, and given Stahl's lack of success with their gravure program, we cannot justify sustaining the continuing expenses of the program.

Sales to Triquest in the second half amounted to $196,340, resulting in profits after costs and expenses directly related to the program of $27,854.  Accordingly, we are forwarding under separate cover a check in the amount of $13,927 that represents half of the profits

generated by these sales.  Details of the calculations follow in the attachment.

(Def. Ex. 2 at 1-2 (emphasis added)).[3]  Based on the existing record, there is no dispute that the PPG/Tego agreement had been terminated.  Moreover, Alsa does not allege that the termination of that contract was a sham, or that PPG induced Tego-Becker to terminate its contract.

Alsa claims that at the time of its notification, PPG knew that the abrupt manner in which it was ceasing to manufacture the Product would place Alsa in an untenable commercial position.  (Compl. ¶ 31).  In particular, Alsa alleges that without the assistance of PPG it was unable to meet the demands of its largest customer, Microsoft, and ultimately lost Microsoft's business.  (Id. ¶¶ 32-33).  It also alleges that it was forced to develop and manufacture its own soft touch coating, at a cost of $1 million, simply to keep its operations afloat.  (Id. ¶ 34).  According to Alsa, PPG knew that the plaintiff

---

[3]  During oral argument, Alsa argued that the letter from Mr. Thaller to Mr. Banoun was not the letter that was referenced in the Complaint, even though it was written in 2000 and informed Alsa that sales of the Product were not profitable, as Alsa alleged in paragraph 30 of its Complaint.  Accordingly, this court ordered Alsa to file a supplemental memorandum stating whether it was challenging the authenticity of the letter submitted in support of the defendant's motion and attaching a copy of the letter described in paragraph 30 of the Complaint.  On November 8, 2013, Alsa filed a supplemental opposition to the motion to dismiss.  (Docket No. 25).  However, Alsa did not dispute the authenticity of the letter submitted by the defendant, nor did it dispute that PPG's exhibit was the letter that was referenced in paragraph 30 of its Complaint.  (See Supp. Opp. at 2-3).  Accordingly, Alsa has presented no reason why the letter should not be considered in connection with the motion to dismiss.  However, to the extent Alsa is relying on the Affidavit of Ike Banoun, which is attached to its supplemental opposition, or on the Supplemental Affidavit of Ike Banoun, which was submitted on November 19, 2013, such evidence is outside the Complaint and may not be considered on a motion to dismiss.  See Alt. Energy, Inc., 267 F.3d at 33.

would be unable to sustain the business alone and would be devastated as a result of its actions.  (See id. ¶¶ 33-34).  It contends that to this day, it continues to struggle finan-cially and is barely able to makes ends meet.  (Id. ¶ 35).

### Alsa's Discovery of PPG's Alleged Fraud

Alsa claims that nearly twelve years later, it learned that PPG had intentionally lied when it represented that it was leaving the soft touch coating business and would no longer sell the Product in any form.  (Id. ¶ 36).  Specifically, Alsa alleges that in May 2012, David Ettman, an individual who had been employed as a purchaser for Motorola, informed the plaintiff that at the time PPG terminated the parties' Agreement, it had a plan "to purposefully place Alsa in a precarious economic position" and avoid its contractual obligations to the plaintiff.  (Id. ¶ 36-37).  In particular, Alsa allegedly learned in 2012 that in February 2000, PPG knew that it was about to enter huge new markets for the Product, including markets within the automotive industry, and that it intentionally withheld this information from Alsa because it wanted to avoid paying any commissions or royalties that would have been due to Alsa under the terms of the Agreement.  (Id. ¶¶ 38-39).  Alsa believes that PPG has illegally sold the soft touch technology under various names, including the name "Velvecron," since its termination of the Agreement in 2000. (Id. ¶ 41).

Based on the information provided by Mr. Ettman, Alsa determined that PPG's stated reasons for terminating the Agreement, including its alleged representations that the soft coating business was not profitable, that PPG had no further interest in the

Product, and that PPG was no longer going to manufacture the Product, were false.  (See id. ¶ 30).  Additionally, Alsa concluded that "PPG fraudulently induced [it] into the contract with the intent to lull Alsa into acquiescence on its licensing rights with the knowledge that it had no intent on living up to its end of the bargain."  (Id. ¶ 40).  Alsa claims that PPG's manufacture of products using the soft touch technology has yielded billions of dollars in sales since 2000, and that PPG's desire to keep those profits for itself is what motivated the defendant to terminate the Agreement and cut it out of the deal.  (Id. ¶ 42).  However, Alsa has not alleged that PPG lied about the termination of the PPG/Tego Agreement.  Nor has it challenged the defendant's representation in its termination notice that it was terminating its Agreement with the plaintiff pursuant to section 5.5 of the parties' contract.

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  ANALYSIS

As described above, Alsa has asserted six separate causes of action against PPG, which include claims for fraudulent inducement (Count I), breach of contract (Count II), fraud (Count III), unfair trade practices (Count IV), and breach of fiduciary duties (Count V), as well as a request for a preliminary and permanent injunction (Count VI).  The plaintiff has agreed to the dismissal of Counts IV and VI.  Accordingly, the plaintiff's claims for unfair trade practices and injunctive relief will be dismissed and will not be addressed further.  With respect to Counts I-III and V, PPG has moved to dismiss those

claims for failure to comply with the pleading requirements of Fed. R. Civ. P. 8(a) and

9(b), and for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6).

Because this court finds that dismissal is warranted for failure to state a claim under Rule

12(b)(6), it is unnecessary to address whether the plaintiff has satisfied the notice

pleading standard set forth in Rule 8(a) or the heightened standard for pleading claims of

fraud under Rule 9(b).

### A.    Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.

Thus, when confronted with a motion to dismiss, the court accepts as true all well-

pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman,

171 F.3d at 46.  Dismissal is only appropriate if the complaint, so viewed, fails to allege a

"plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95

(1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955,

1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane."  Garcia-Catalan v.

United States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the

complaint's factual allegations (which must be accepted as true) from its conclusory legal

allegations (which need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R.,

676 F.3d 220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the

factual allegations are sufficient to support 'the reasonable inference that the defendant is

liable for the misconduct alleged.'"  Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46

(1st Cir. 2011)) (additional citation omitted).  This second step requires the reviewing court to "draw on its judicial experience and common sense."  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  Morales-Cruz, 676 F.3d at 224 (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

**B.      Counts I, III and V: Claims for Fraudulent Inducement,
          Fraud and Breach of Fiduciary Duties**

PPG argues that each of Alsa's tort claims, including its claims for fraudulent inducement, fraud and breach of fiduciary duties, is barred under Pennsylvania law by the "gist of the action" doctrine and the economic loss doctrine.  (Def. Mem. at 2, 13-16).  It also contends that the parol evidence rule precludes Alsa from maintaining a claim for fraud or fraud in the inducement, and that the plaintiff's failure to plead the existence of a confidential relationship warrants the dismissal of its claim against PPG for breach of its fiduciary duties.  (Id. at 2, 11-12, 16-17).  This court finds that the gist of the action doctrine defeats Alsa's tort claims, and that Alsa's allegations are otherwise insufficient to state a plausible claim for relief under Rule 12(b)(6).  Therefore, the defendant's motion to dismiss Counts I, III and V is allowed.

**i.      The "Gist of the Action" Doctrine**

-14-

"In Pennsylvania, the gist of the action doctrine is a theory under common law [that is] 'designed to maintain the conceptual distinction between breach of contract claims and tort claims.'"  Insyte Med. Techs., Inc. v. Lighthouse Imaging, LLC, Civil Action No. 13-1375, 2014 WL 958886, at *5 (E.D. Pa. Mar. 11, 2014) (slip op.) (quoting Addie v. Kjaer, 737 F.3d 854, 865-66 (3d Cir. 2013)) (additional citation omitted).  "As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  "For the tort action to survive, 'the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral.'" DeFebo v. Andersen Windows, Inc., 654 F. Supp. 2d 285, 290 (E.D. Pa. 2009) (quoting eToll, Inc., 811 A.2d at 14) (additional quotations and citation omitted).  "Thus, while the existence of a contractual relationship between two parties does not prevent one party from bringing a tort claim against another, the gist of the action doctrine precludes tort suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort." Insyte Med. Techs., 2014 WL 958886, at *5. "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." eToll, Inc., 811 A.2d at 14 (quoting Bohler-Uddeholm Am. , Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)) (additional quotations and citation omitted).

-15-

Courts applying Pennsylvania law "have held that the [gist of the action] doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Id. at 19 (internal quotations and citations omitted).  "In short, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 528 (W.D. Pa. 2011).

Alsa argues that it is premature to determine, at the motion to dismiss stage, whether the gist of the action sounds in contract or in tort, and notes that the Federal Rules of Civil Procedure allow plaintiffs to plead in the alternative.  (Pl. Opp. Mem. at 14).  "A court should be cautious when determining that a claim should be dismissed under the gist of action doctrine, due in part to the fact that Fed. R. Civ. P. 8(d)(2) allows parties to plead multiple claims as alternative theories of liability." PPG Indus., Inc., 760 F. Supp. at 528 (footnote omitted).  However, there is no set rule and district courts have "appl[ied] the doctrine at the pleading stage to dismiss what are in reality contract claims, with prejudice." Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am., 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013) (citing cases).  In the instant case, both the alleged facts and the documents referred to in the Complaint demonstrate that the gravamen of

Alsa's claims are in contract.  Accordingly, this court finds that all of Alsa's tort claims are barred by the gist of the action doctrine.

### The Plaintiff's Fraud Claims

Alsa has asserted two separate claims against PPG for fraud.  In Count I, Alsa alleges that PPG made several misrepresentations to the plaintiff, with knowledge of their falsity, in order to induce it "to agree to forego its exclusive right to distribute the Product by itself or through other manufacturers."  It further alleges that Alsa reasonably relied on those representations to its detriment.  (Compl. ¶¶ 46-49).  Similarly, in Count III, Alsa alleges that PPG "made knowing misrepresentations to Alsa intending to induce detrimental reliance[,]" that Alsa reasonably relied on those misrepresentations, and that the plaintiff was harmed as a result.  (Id. ¶¶ 59-61).  Because the allegedly fraudulent representations concerned the performance of contractual duties, and were inextricably interwoven with PPG's obligations under the parties' Agreement, both of Alsa's fraud claims are barred under Pennsylvania law.

"The Superior Court [of Pennsylvania] has held that fraud claims should be barred where they arose during the course of the parties' contractual relationship; where the allegedly fraudulent acts also were breaches of duties 'created and grounded in the . . . contract[;]' and where the damages 'would be compensable in an ordinary contract action [and] thus, the claim would essentially duplicate a breach of contract action.'" Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. 2010) (quoting eToll, Inc., 811 A.2d at 20-21).  As the court explained in eToll:

> the cases seem to turn on the question of whether the fraud con-
> cerned the performance of contractual duties.  If so, then the alleged
> fraud is generally held to be merely collateral to a contract claim for
> breach of those duties.  If not, then the gist of the action would be
> the fraud, rather than any contractual relationship between the
> parties.

811 A.2d at 19.  Thus, "[w]here fraud claims are 'inextricably intertwined' with the

contract claims, the gist of the action is contractual, and the fraud claim should be

dismissed."  Pediatrix Screening, Inc., 602 F.3d at 549 (quoting eToll, 811 A.2d at 21).

Courts in Pennsylvania have recognized "that fraud in the inducement of a contract

would not necessarily be covered by [the gist of the action] doctrine because fraud to

induce a person to enter into a contract is generally . . . not 'interwoven' with the terms of

the contract itself."  eToll, Inc., 811 A.2d at 17 (punctuation omitted).  See also Defebo,

654 F. Supp. 2d at 290 (noting that "fraud-in-the-inducement claims are not always

barred by the gist of the action doctrine").  "However, the type of fraud is not necessarily

dispositive, and courts have applied the doctrine to claims for fraud-in-the-inducement."

DeFebo, 654 F. Supp. 2d at 290 (internal citation omitted).  Moreover, "[a] breach of

contract claim . . . 'cannot be bootstrapped into a fraud claim merely by adding the words

fraudulently induced or alleging the contracting parties never intended to perform.'"

InSyte Med. Techs., Inc., 2014 WL 958886, at *9 (quoting Galdieri v. Monsanto Co., 245

F. Supp. 2d 636, 650 (E.D. Pa. 2002)) (internal quotations omitted).  "A court must

examine whether the fraud claim is actually barred by the doctrine 'based on the

individual circumstances and allegations of the plaintiff.'"  Id. (quoting eToll, Inc., 811 A.2d at 17).

An examination of Alsa's Complaint shows that the alleged misrepresentations supporting its fraud in the inducement and fraud claims directly concern the performance of contractual duties and are "inextricably intertwined" with Alsa's contract claims. eToll, Inc., 811 A.2d at 21.  As described above, Alsa has alleged that PPG induced it to relinquish its exclusive rights in the Product by representing that the parties "would jointly and severally develop markets for soft feeling paint[,]" promising that it "would abide by the terms that were later memorialized in the Agreement[,]" and stating that "the parties would work together in good faith to pursue the goals of the Agreement." (Compl. ¶¶ 17, 19).  Each of these representations amounts to nothing more than a promise to adhere to the terms of the Agreement.  Thus, the alleged promise to jointly and severally develop markets for the Product was specifically described as a primary purpose of the Agreement, and was therefore embodied by the terms of the Agreement.  (See Def. Ex. 1 at 1).  Moreover, PPG's alleged representations that it would abide by the terms of the Agreement, and would do so in good faith, directly concerned the performance of PPG's contractual duties.  Accordingly, the Agreement "is far from collateral to the fraud claim[s]; rather . . . the agreement is at the heart of the fraud claim[s], and therefore the gist of the fraud action is unmistakably contractual, not tortious."  Insyte Med. Techs., Inc., 2014 WL 958886, at *9 (quoting KSM Assocs., Inc. v. ACS State Healthcare, LLC, No. 05-4118, 2006 WL 847786, at *3 (E.D. Pa. Mar. 30, 2006)) (punctuation omitted).

To the extent Alsa is relying on the representations made by PPG in its February 2000 termination letter to support its claim for fraud, it does not alter this court's conclusion that the gist of the action is contractual.  As alleged in the Complaint, and as further described in the letter, those representations directly concerned PPG's termination of the parties' contractual relationship pursuant to section 5.5 of the Agreement.  Because PPG's duties regarding termination were created by and grounded in the parties' contractual Agreement, any harm that Alsa allegedly suffered as a result of the letter "would be compensable in an ordinary contract action[.]"  eToll, Inc., 811 A.2d at 20-21.  Therefore, any alleged fraud "was not so tangential to the parties' relationship so as to make fraud the gist of the action."  Id. at 21.

## Claim for Breach of Fiduciary Duties

In Count V of its Complaint, the plaintiff alleges that PPG owed it fiduciary duties "[d]ue to the relationship created between PPG and Alsa[,]" and that PPG's breach of those duties caused Alsa to suffer serious economic harm.  (Compl. ¶¶ 69-71).  For the reasons that follow, this court finds that this claim too is barred by the gist of the action doctrine.

"Claims for breach of fiduciary duty and breach of contract can coexist if the fiduciary duty is based on duties imposed as a matter of social policy and if the fiduciary duty is not based on a contractual agreement between the parties."  InSyte Med. Techs., Inc., 2014 WL 958886, at *11.  Thus, "[a] breach of fiduciary duty claim may survive the gist of the action doctrine where the fiduciary relationship in question is well established

and clearly defined by Pennsylvania law or policy[.]"  Id.  However, "[a] breach of

fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty

alleged is grounded in contractual obligations."  Id.  See also Clark Motor Co., Inc. v.

Mfrs. & Traders Trust Co., No. 4:07-CV-856, 2008 WL 9393759, at *10 (M.D. Pa. Nov.

20, 2008) (slip op.) ("If the fiduciary relationship is created solely by the contractual

agreement, . . . a breach of fidcuciary duty claim based upon that relationship will be

barred by the gist of the action doctrine"), aff'd, 360 F. App'x 340 (3d Cir. 2010).  Where

such circumstances exist, "[t]he fiduciary duty claim is then 'inextricably intertwined'

with the breach of contract action."  InSyte Med. Techs., Inc., 2014 WL 958886, at *11,

and cases cited.

The record in the instant case shows that the parties' relationship, and their obliga-

tions to one another, were created and defined solely by the terms of their contractual

Agreement.  Under Pennsylvania law, "[a] fiduciary relationship arises . . . where 'one

person has reposed a special confidence in another to the extent that the parties do not

deal with each other on equal terms, either because of an overmastering dominance on

one side or weakness, dependence or justifiable trust, on the other.'"  Id. (quoting Ginley

v. E.B. Mahoney Builders, Inc., No. 04-1986, 2005 WL 27534, at *1 (E.D. Pa. Jan. 5,

2005)) (additional citation omitted).  Such relationships have been defined to include "the

relationship between attorneys and their clients, between majority and minority

shareholders and between joint venturers."  Clark Motor Co., Inc., 2008 WL 9393759, at

*10.  However, they do not include relationships that arise solely out of "an arms length

business contract." Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.,

28 F. Supp. 2d 947, 953 (E.D. Pa. 1998).  Here, the alleged facts show that the relation-

ship between Alsa and PPG arose as the result of an arms length agreement between a

manufacturer and a distributor following two years of negotiations.  Alsa has cited no

cases in which a fiduciary relationship was found to exist under such circumstances.  Nor

has it alleged any facts that would establish that the parties' relationship was unequal or

involved a special level of trust or confidence.  Therefore, Count V is barred by the gist

of the action doctrine.  See InSyte Med. Techs., Inc., 2014 WL 958886, at *12 (finding

that claim for breach of fiduciary duty was barred by gist of the action doctrine where

parties were engaged in "an arm's length commercial relationship, rather than one of

special trust or confidentiality").

    The plaintiff argues that a fiduciary relationship existed because "Alsa was

dependent on PPG to meet the Soft Touch manufacturing demands of customers" and

because Alsa "remained dependent [on] PPG for manufacturing of the Soft Touch

product" even after the termination of the Agreement.  (Pl. Opp. Mem. at 16-17).

However, the record demonstrates that any dependence Alsa had on PPG's ability to

manufacture the Product arose out of the parties' Agreement and not out of any kind of

special relationship or dependence that transcended the parties' contractual arrangement.

"There is a crucial distinction between surrendering control of one's affairs to a fiduciary

or confidant or party in a position to exercise undue influence and entering an arms length

commercial agreement, however important its performance may be to the success of one's

business." <u>Valley Forge Convention &  Visitors Bureau</u>, 28 F. Supp. 2d at 953.  Because

the alleged relationship between the parties to this litigation involved the latter type of

arrangement, Alsa's claim against PPG for breach of its fiduciary duties is barred and

must be dismissed.

### ii.      Alternative Bases for Dismissal of Alsa's Tort Claims

This court finds that Counts I, III and V fail to state a plausible claim for relief for

other reasons as well.  Therefore, even if it is assumed that the gist of the action doctrine

is inapplicable, PPG is still entitled to have those claims dismissed.

### Absence of a Fiduciary Relationship

In order "[t]o allege a breach of fiduciary duty, a plaintiff must [first] establish that

a fiduciary or confidential relationship existed between [the plaintiff] and the defen-

dants."   <u>Baker v. Family Credit Counseling Corp.</u>, 440 F. Supp. 2d 392, 414 (E.D. Pa.

2006).  Although no precise formula exists for determining when such a relationship

exists, "[t]he 'essence' of such a relationship is 'trust and reliance on one side, and a

corresponding opportunity to abuse that trust for personal gain on the other.'"  <u>Id.</u> at 415

(quoting <u>In re Estate of Scott</u>, 455 Pa. 429, 316 A.2d 883, 885 (1974)).  As described

above, Alsa has not alleged any facts to show that its relationship with PPG involved

anything more than an arms length business contract between commercial entities.

Therefore, it has not alleged a plausible claim for breach of fiduciary duties.

### Failure to Allege Misrepresentations

This court also finds that Alsa has failed to state a plausible claim for fraudulent inducement or fraud.  In order to state a claim based on either of those theories, the plaintiff must allege that the defendant made misrepresentations of material fact.  See EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253, 275 (3d Cir. 2010) (listing elements of a claim for fraud, including "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false"); Fitzpatrick v. Queen, No. Civ. A. 03-4318, 2005 WL 1172376, at *4 (E.D. Pa. May 16, 2005) (listing elements of claim for fraud in the inducement, including "a material misrepresentation of fact").  Because the record fails to show that PPG's alleged statements to Alsa were false, those claims must be dismissed for this reason as well.

To the extent Alsa relies on statements that PPG allegedly made during the course of the contract negotiations, including its alleged statements that it would "jointly and severally develop markets for soft feeling paint[,]" would abide by the terms of the Agreement, and would work with Alsa "in good faith to pursue the goals of the Agreement[,]" it has not alleged any facts showing that those statements were misleading.  (See Compl. ¶¶ 17, 19).  Rather, Alsa's own allegations indicate that PPG carried out its contractual obligations for nearly three years, from the date the Agreement became effective on March 6, 1997 until it sent Alsa the termination letter in February 2000.  (See Def. Ex. 1 at 1; Compl. ¶ 30; Def. Ex. 2).  They also indicate that throughout that time period, PPG provided Alsa with regular accountings and payments, including payments that at one time reached approximately $100,000 a month, as called for under

the terms of the parties' Agreement.  (Compl. ¶¶ 27-29).   Moreover, the record shows that PPG ultimately terminated the Agreement because "the Soft-Feeling Licensing Agreement between Tego-Becker and PPG Industries [had] been terminated."  (Def. Ex. 2 at 1).  This was consistent with Section 5.5 of the Agreement, which specifically authorized PPG to terminate its Agreement with Alsa "[i]n the event the PPG/TEGO AGREEMENT terminates prior to five (5) years after the EFFECTIVE DATE[.]"  (Def. Ex. 1 ¶ 5.5).  Accordingly, the record belies Alsa's conclusory allegations that PPG acted fraudulently, and that it "had no intent on living up to its end of the bargain."  (See Compl. ¶ 40).  Alsa has failed to allege any facts to support its conclusion of fraud. Rather, the facts Alsa has alleged indicate that PPG's alleged statements regarding its commitment to work with Alsa and to carry out the terms of the Agreement were true when made, since PPG carried out its obligations for three years.

To the extent Alsa's fraud claim is based on statements that PPG made to justify its termination of the Agreement, the record similarly fails to show that PPG's representations were false or misleading.  Although Alsa alleges that PPG purported to terminate the Agreement because the soft coating business was not profitable and the defendant no longer wished to manufacture the Product, the letter PPG sent clearly stated that the termination was pursuant to section 5.5 and "[a]s a direct consequence" of the termination of its agreement with Tego-Becker.  (Def. Ex. 2 at 1).  Because Alsa has not alleged any facts showing that PPG's statements about the termination of the PPG/Tego Agreement were false, or that the basis for PPG's termination of its Agreement with Alsa

-25-

was inconsistent with section 5.5, this court finds that Alsa has failed to allege a plausible claim of fraud.  Accordingly, Counts I, III and V of the Complaint will be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[4]

### C.   Count II: Claim for Breach of Contract

In Count II of its Complaint, Alsa has asserted a claim against PPG for breach of contract.  Specifically, Alsa alleges that "PPG breached the covenant of good faith and fair dealing as well as the specific terms of the contract."  (Compl. ¶ 55).  This court finds that PPG is entitled to dismissal of this claim as well.[5]

In order to state a claim for breach of contract, the plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."  Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (quoting J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002)) (punctuation omitted).  In the instant case, Alsa's Complaint fails to identify any specific term of the Agreement that was allegedly breached by the defendant.  (See Compl. ¶¶ 54-57).  Moreover, as described above, the record indicates that PPG carried out its contractual duties for a period of nearly three

---

[4]  In light of this court's conclusion that Alsa's tort claims must be dismissed for the reasons described above, it is not necessary to address PPG's argument that these claims are barred by the economic loss doctrine or that the parol evidence rule bars Alsa's claims for fraud and fraud in the inducement.  (See Def. Mem. at 15-17).

[5]  Because the Termination Agreement attached as Exhibit 3 to Attorney Goldblatt's Declaration is not properly before the court on the motion to dismiss, this court has not addressed PPG's argument that the parties' execution of the Termination Agreement constituted a novation that defeats the plaintiff's claim for breach of contract.  (See Def. Mem. at 18-19).

years, and that its termination of the Agreement complied with the unambiguous language

of section 5.5.  Therefore, Alsa has failed to allege sufficient facts to support a claim that

PPG breached an express provision of the Agreement.

Alsa's Complaint also fails to state a claim for breach of the implied covenant of

good faith and fair dealing.  The Superior Court of Pennsylvania has adopted Section 205

of the Restatement (Second) of Contracts, which provides that "[e]very contract imposes

on each party a duty of good faith and fair dealing in its performance and its

enforcement."  Kaplan v. Cablevision of PA, Inc., 671 A.2d 716, 721-22 (Pa. Super. Ct.

1996) (quoting Restatement (Second) of Contract, § 205).  The term "'[g]ood faith' has

been defined as '[h]onesty in fact in the conduct or transaction concerned.'"  Id. at 722

(quoting 13 Pa.C.S.A. § 1201).  While the Superior Court has recognized that "[t]he

breach of the obligation to act in good faith cannot be precisely defined in all circum-

stances," it has noted that "examples of 'bad faith' conduct include: 'evasion of the spirit

of the bargain, lack of diligence and slacking off, willful rendering of imperfect per-

formance, abuse of a power to specify terms, and interference with or failure to cooperate

in the other party's performance.'"  Id. (quoting Somers v. Somers, 418 Pa. Super. 131,

613 A.2d 1211, 1213 (1992)).  As in the case of its claim for breach of an express term of

the Agreement, Alsa fails to identify how the defendant's actions constituted a breach of

the implied covenant of good faith and fair dealing.[6]  (See Compl. ¶¶ 54-57).  In light of

---

[6] PPG argues that in order to state a claim for breach of the implied covenant of good
faith and fair dealing, the plaintiff must allege facts showing that the defendant breached "*a*

PPG's alleged compliance with the Agreement over the course of several years, and its apparent justification for terminating the Agreement, this court finds that Alsa has failed to state a claim for relief on this basis.

Alsa argues that "PPG blatantly breached the specific terms of the contract because PPG secretly sold the Soft Touch technology under various names and failed to pay Alsa profits and royalties pursuant to Section 4 of the Agreement." (Pl. Opp. Mem. at 13). This argument does not create a triable claim. In its Complaint, Alsa alleges that the sales at issue occurred after PPG's termination of the Agreement in 2000. (Compl. ¶ 41). Because Alsa has not alleged any facts to show that PPG's conduct in ending the parties' relationship violated the termination provisions of the Agreement or was other-wise improper, there is no support for its assertion that PPG was obligated to make any payments to the plaintiff or that its failure to do so amounted to a breach of its contractual obligations.

Similarly unconvincing is Alsa's contention that "PPG breached the implied duty of good faith and fair dealing by inducing Alsa into the contract with the intent to lull Alsa into acquiescence on its licensing rights with the knowledge that it had no intent on

---

*specific duty imposed by the contract other than the covenant of good faith and fair dealing ...."* (Def. Mem. at 12-13 (quoting Pro Acoustics, LLC v. Korn, 2010 U.S. Dist. LEXIS 88101, at *8 (E.D. Pa. Aug. 24, 2010)). Alsa argues that this is not an accurate description of Pennsylvania law, and that an identical argument has been rejected by at least one federal court in that state. (Pl. Opp. Mem. at 11-13). This court finds that the issue does not need to be resolved here because even assuming a plaintiff can state a claim for breach of the implied covenant of good faith and fair dealing without alleging a breach of a specific contractual obligation, Alsa has failed to state any such claim in the instant case.

living up to its end of the bargain." (Pl. Opp. Mem. at 13). As an initial matter, and as detailed above, Alsa's claim of fraudulent inducement is unsupported by the facts alleged in the Complaint and cannot withstand PPG's motion to dismiss. More importantly, and as also described above, Alsa's own assertions that PPG adequately performed its contractual obligations for three years undermines its contention that PPG breached its obligation of good faith and fair dealing. In the absence of factual support, Alsa's conclusory charge of wrongdoing cannot withstand the motion to dismiss. Therefore, PPG's motion to dismiss is allowed with respect to Count II of the Complaint.

### D. PPG's Request for Dismissal with Prejudice

During oral argument, this court instructed PPG to search for and produce, if available, the PPG/Tego Agreement and the notice of termination of that agreement. PPG subsequently located both documents and filed them with the court. (See Exs. A and B to the Affidavit of William Uhl, Esq. in Support of Defendant PPG Industries, Inc.'s Motion to Dismiss the Complaint (Docket No. 29)). Those documents indicate that Tego-Becker terminated the PPG/Tego Agreement on January 6, 2000, pursuant to Subsection 5.3 of the PPG/Tego Agreement. While PPG has not relied on those documents in support of its motion to dismiss, it argues that they warrant a dismissal of Alsa's claims with prejudice because they demonstrate that any effort by Alsa to amend its Complaint would be futile since PPG clearly had the right to terminate its Agreement with Alsa. (See Def. Supp. Reply Mem. (Docket No. 28) at 2-3).

Although the question is a close one, this court declines to dismiss Alsa's claims with prejudice.  Under Fed. R. Civ. P. 15(a), leave to amend should be freely given "when justice so requires."  Alsa has not sought leave to amend, and has not had an opportunity to present arguments in favor of an amendment.  Furthermore, this court is not able to conclude, at this early stage in the proceedings, without any discovery, that any such effort by Alsa would necessarily be futile.  Accordingly, Alsa's claims will be dismissed without prejudice.

## IV.  <u>CONCLUSION</u>

For all the reasons detailed herein, "Defendant PPG Industries, Inc.'s Motion to Dismiss the Complaint in Its Entirety" (Docket No. 9) is ALLOWED.  However, the dismissal shall be WITHOUT PREJUDICE.


<u>    / s / Judith Gail Dein                </u>
Judith Gail Dein
U.S. Magistrate Judge